## Senft *v.* McIlvain, Appellant.

*Landlord and tenant—Wrongful distress—Damages—Evidence—Act of March 21, 1772, 1 Sm. L. 370.*

1. In an action against a landlord to recover damages for distress made at a time when no rent was in fact due, it is permissible to introduce testimony of an agent of the defendant's predecessor in title to show the terms of the plaintiff's lease from such prior owner, and that the defendant in taking title assented to the terms of the existing lease.

2. Where in an action to recover damages for an alleged wrongful distress, the court refers in its charge to a particular article as having been taken, but in answer to points positively instructs the jury not to consider the article in estimating the damages, inasmuch as the article had not been a part of the distress, the judgment will not be reversed because of the mistaken statement of the judge.

3. In an action to recover damages for wrongful distress when no rent is due, the court commits no error in referring in its charge to the Act of March 21, 1772, 1 Sm. L. 370, and stating that the plaintiffs claimed to recover double the amount of the value of the property taken, although there is no distinct claim in the plaintiffs' statement of a demand to recover double damages, if the statement refers to the act, and the damages are named at double the amount of the value of the property sold.

4. Where a tenant's goods are wrongfully distrained when no rent is due, the tenant may proceed in trespass under the act of 1772, without resorting to replevin.

Argued March 17, 1910.    Appeal, No. 9, March T., 1910, by defendant, from judgment of C. P. York Co., Oct. T., 1908, No. 37, on verdict for plaintiffs in case of Samuel Senft and William Senft, trading as Samuel Senft & Son, *v.* James K. McIlvain.    Before Rice, P. J., Henderson, Orlady, Head, Beaver and Porter.    Affirmed.

Trespass to recover damages for wrongful distress when no rent was due.    Before Bittenger, P. J.

Plaintiffs' statement was as follows:

The plaintiffs, Samuel Senft and William Senft, trading and doing business as Samuel Senft & Son, by their

attorneys James G. Glessner and Kerwin W. Altland, claim damages of the defendant James K. McIlvain, constable, in the sum of $283.50, which is justly due and owing to the plaintiffs by the defendant upon the cause of action, whereof the following is a statement:

The plaintiffs, to wit, on August 26, 1908, to wit, in Spring Grove, York county, Pa., held and enjoyed certain premises, with the appurtenances, as tenant thereof to E. W. Senft, at and under a certain rent; yet the defendant, not regarding the act of assembly, entitled, "An act for the sale of goods distrained for rent, and to secure such goods to the persons distraining the same for the better security of rents, and for other purposes therein mentioned," approved March 21, 1772, then and there wrongfully and injuriously seized, took, and distrained certain goods and chattels, to wit, one black horse, of the plaintiffs' then found and being in and upon the said premises, with the appurtenances, of the value of $140, and sold said black horse on September 8, 1908, as such distress as aforesaid, by color of said act, for certain rent, to wit, the sum of $50.00, then and there pretended by plaintiffs' landlord E. W. Senft, to be in arrear and due said E. W. Senft, for the said demised premises, with the appurtenances; whereas at the time of the making of the said distress and sale, as aforesaid, no rent was in arrear or due to the defendant, for or in respect of said premises, with the appurtenances: that on September 8, 1908, aforesaid, said defendant, also sold as the property of plaintiffs, on account of said rent alleged to be in arrears and due to said E. W. Senft, one halter and one horse blanket, of the value of $1.75, that had not been levied upon or distrained by said defendant: said acts being contrary to the form of the said statute in that case made and provided, to the damage of the plaintiffs of $283.50: wherefore this suit is brought.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiffs for $130. Defendant appealed.

*Errors assigned* were the various rulings and instructions set forth in the opinion of the Superior Court.

*A. J. Hershey*, for appellant.

*James G. Glessner*, with him *K. W. Altland*, for appellees.

OPINION BY BEAVER, J., July 20, 1910:

The trial in the court below was in an action of trespass for an illegal distraint for rent alleged to be in arrear, under the provisions of the act of March 21, 1772.

The plaintiffs below in their statement, acknowledging themselves as the tenants of one E. W. Senft, allege that he "then and there wrongfully and injuriously seized, took, and distrained certain goods and chattels, to wit, one black horse of the plaintiffs, then found being in and upon the said premises, with the appurtenances, of the value of one hundred and forty dollars, and sold said black horse on the 8th day of September 1908, as such distress as aforesaid, by color of said act, for certain rent, to wit, the sum of fifty dollars, then and there pretended by plaintiffs' landlord, E. W. Senft, to be in arrear and due said E. W. Senft, for the said demised premises, with the appurtenances; whereas at the time of the making of the said distress and sale, as aforesaid, no rent was in arrear or due to the defendant, for or in respect of said premises, with the appurtenances."

The third section of the Act of March 21, 1772, 1 Sm. L. 370, provides: "That in case any distress and sale shall be made by virtue of this act, for rent pretended to be in arrear and due, when in truth no rent shall appear to be in arrear or due to the person or persons distraining or to him or them, in whose name or names, or right, such distress shall be taken as aforesaid, that then the owner of such goods and chattels distrained and sold as aforesaid, his executors or administrators, shall and may, by action of trespass, or upon the case, to be brought against the

person or persons so distraining, any or either of them, his or their executors or administrators, recover double the value of the goods or chattels so distrained and sold, together with full costs of suit."

The distinct allegation of the plaintiffs was that at the time of the distress complained of there was no rent due said landlord and that, therefore, the distress was not only illegal, but that in an action of trespass they were entitled to recover double the value of the goods or chattels distrained and sold, together with costs.

The principal question involved in the case was one of fact—Was any rent due from the plaintiffs to their landlord at the time when the defendant, as the bailiff of the landlord, made the distress complained of?

The testimony, the admission of, and the refusal to strike which from the record, is complained of in the first, second, third, fourth and sixth specifications of error, relates to this question. The testimony, as it seems to us, was relevant and material and was properly admitted. It went directly to the issue involved and tended to show that the plaintiffs held the demised premises for a period of six months after the original lease made to them by Hershey, the former owner, expired, the same having been extended for six months, by an understanding between Hershey's agent who sold the property to Senft, the landlord, which was communicated to the tenants. The landlord, it is true, endeavored to establish a direct lease or at least a verbal understanding between him and his tenants in regard to their continued occupancy of the premises after April 1, 1908, when the lease with their former landlord expired. This, however, was denied by the plaintiffs, and the question depended to a large extent upon the testimony of P. H. Hershey, the attorney in fact of the previous owner, who was a competent witness 'and whose testimony was relevant and material to the issue.

The fifth assignment of error relates to the refusal of the court to strike from the record the statement made by

the court of which complaint is made: "Well, he took it
away [a blanket] and after that he is responsible for it,
unless he had a right to take it. The man lost his blanket,
and he has a right to recover, unless you show a defense,"
and the testimony relating thereto. Whether this testi-
mony was properly admitted and the statement of the
court growing thereout was proper is of little practical
value, because in the answer to the defendant's second
and third points the jury were not allowed to consider the
question of the value of halter and blanket, for which the
plaintiffs claim in their statement. These points and
their answers were as follows: "Second. If the jury find
from the evidence that the halter and blanket were not
sold, the plaintiffs cannot recover the value of such halter
and blanket. By the Court: We answer this point as
follows: This point is affirmed. Third. Even if the jury
find that the halter and blanket were sold by the defend-
ant, the plaintiff cannot recover in this suit, because the
halter and blanket were not a part of the distress and,
consequently, cannot be recovered for in this suit. By
the Court: We answer this point as follows: This point
is affirmed." The assignment may, therefore, be disre-
garded.

The seventh assignment relates to a paragraph in the
charge of the court which is simply a statement of the
act under which the plaintiffs claim and the amount of
damages to which they are entitled thereunder, which
seems to us to be entirely proper, so far as it goes, and is
in accordance with our case of Thomas v. Gibbons, 21
Pa. Superior Ct. 635. There is no distinct affirmance in
the plaintiffs' statement that they seek to recover double
damages under the act referred to, although the act is
specifically referred to in the statement, and the damages
are evidently placed at double the amount of the value of
the property sold, but this question was not raised in the
court below and is not complained of in any of the as-
signments of error. We do not, therefore, consider the
failure of the plaintiffs to specifically claim the measure

of damages provided for in the statute, as is intimated in Thomas v. Gibbons, 21 Pa. Superior Ct. 635, to be necessary. There is, however, no serious denial of justice herein, because, as is said in the case just cited: "Such a distress, however, being wholly without authority, is a trespass throughout, and the tenant is not confined to an action on the statute, but may sue at common law for the damages actually sustained. . . . In such action, the landlord's liability for exemplary damages, as in all cases of trespass, depends on the circumstances, and is to be determined by the jury, under proper instructions by the court."

The eighth assignment of error relates to the refusal by the court of the defendant's fourth point, which was: "If the jury find from the evidence that the plaintiffs had notice of the distress and that they did not sue out a writ of replevin, the plaintiffs have no standing in a suit of trespass, and the verdict must be for the defendant.". The court answered this point: "This point is not correct and is refused." The action of trespass is specially set forth in the provisions of the act of 1772 already quoted as the proper remedy and we, therefore, see no error in the answer of the court to this point.

The ninth and tenth specifications of error relate to the defendant's fifth and sixth points which requested binding instructions for the defendant, and the eleventh to a motion for judgment non obstante veredicto, which were refused. The real question involved being essentially one of fact, these points and motion were properly refused.

The twelfth assigns the refusal of the court to grant a new trial, which is not the subject of an assignment of error. The record shows no motion to strike off said refusal, upon which the question could be properly raised.

Taking the case as a whole and viewing it from the different assignments of error as presented, we see no reversible error, and the assignments are, therefore, all dismissed.

Judgment affirmed.