| 102 | 307 |
| 148 | 207 |
| 102 | 307 |
| 173 | 15 |
| 102 | 307 |
| d204 | ¹452 |

# Fernwood Masonic Hall Association *versus* Jones.

1. Where, in a lease the lessee covenants to pay the lessor for all gas consumed on the premises, a sum due for gas consumed is to be regarded as rent in arrear, and may be distrained for.

2. Where there is a clause in a lease, assigning to the landlord all goods on the premises, in case of non-payment of rent, and the landlord distrains the goods as the property of the tenant, he is bound, while holding them under the distress, to act in all respects as if the tenant were the owner.

3. In an action to recover damages for an excessive distress, testimony respecting the seizure and sale of the goods of other persons, in which plaintiff has no interest, is irrelevant, and should be excluded.

4. Where an excessive distress is not wanton or willful, the only damages recoverable are the fair value of the goods at the place and time distrained, with the cost of replacing them and other actual injury, to which interest may be added.

February 7th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Delaware county :* Of January Term 1882, No. 421.

Case, by Jacob Jones and Mary L. Jones, his wife, in right of said wife, against The Fernwood Masonic Hall Association, and Neil McFadden, to recover damages for an alleged excessive distress. Plea, not guilty.

On the trial, before CLAYTON, P. J., the following facts appeared : The Masonic Hall Association owned a large building at Fernwood, Delaware county, a portion of which was fitted up to be used as a summer hotel or boarding-house, a portion as a public hotel, and a portion as a lodge-room. The whole building was lighted with gas, manufactured on the premises from gasoline.

On April 15th 1878, the association leased said premises to plaintiffs, Jacob Jones and Mary L. Jones, his wife, in right and on behalf only of the said Mary L. Jones, she being a feme-sole trader, and her husband, having no interest therein, joining for the purpose of preventing any doubts as to the

[Fernwood Masonic Hall Asso. *v.* Jones.]

validity of the agreement, for the yearly rent of $1,500, payable quarterly.    The lessee and her husband covenanted to pay the rent when due; to pay for all gas consumed at the rate of $3 per 1,000 feet, and also entered into other covenants in regard to the management of the hotel.

The lease contained, inter alia, the following clauses:—

" And the party of the second part, as a security for the payment of all rents falling due under this lease, hereby grants, bargains, and sells, to the party of the first part, all the household and kitchen furniture of the second party, upon the premises, or to be brought thereon, without any exception: and hould the rent at any time be unpaid, or the goods be removed from the premises, the party of the first part may follow said goods, take possession of them, and for all rent due, sell them at auction on three days' notice, and for all rent not due, hold them in possession in the meantime as security ;  . . . .

" It is hereby further understood and agreed that the said party of the second part, shall and will punctually pay the above said rent as it falls due quarterly, and faithfully comply with all the conditions and requirements on her part as is set forth in this lease, which said proper fulfillment on her part shall be determined and certified to by Samuel A. Farrell, the agent of the said party of the first part, or any other agent appointed by the said first party ; then in such case in consideration thereof a deduction will be made of $75 from each said quarter's rent; otherwise the said rent to be and remain the full amount as above mentioned."

On September 19th 1879, the rent was in arrear $700, and gas to the value of $105 had been consumed which was not paid for, making a total of $805.    On said date, defendant distrained on the goods upon the premises for said sum.    Said goods were appraised at $1,351.95, and were sold at public sale for $845.80.    Plaintiffs thereupon brought this suit.

Plaintiffs offered evidence to show the value of certain of the furniture and goods sold which they alleged belonged to their daughter.    Objected to.    Objection overruled.    Evidence admitted.    Exception.    (Eleventh assignment of error.)

Defendant requested the court to charge, inter alia, as follows :—

2. If the jury find, from the evidence, that the payment for gas consumed on the premises was part of the consideration for the tenancy, and there was any sum due for gas by the tenants at the time of the distress, and the landlord had paid or was responsible for payment for gas, then it was competent for the landlord to include the amount due for gas and unpaid as part of the rent.

Answer. My construction of this lease is, in no event shall the rent be more than $1,500 per year, but subject to be reduced by the tenants performing the other covenants (including the payment of gas bills) to $1,200 per year. The gas bills not being paid, the defendant is entitled to the full rent, $1,500 per year, and no more.

9. The written lease containing a bill of sale of all the household goods on the premises, or, which might be brought thereon, to the Fernwood Masonic Hall Association, the title to said goods was thereby vested in the association at the time of the distress and sale, and the plaintiffs have no claim, which can be maintained in this action. Refused.

The court charged the jury, inter alia, as follows :—

" The next question will be, has the defendant distrained for more rent than was due ? From what I have said, you will answer this question in the affirmative. You may safely find that the landlords here made a mistake, and for that mistake they are liable. The tenant must not pay for the landlord's mistakes. Under the construction I have given of the lease, I say you may safely find that the landlords have levied for $105 more rent than was due, and as the defendants sold all the goods levied upon, and have received of the proceeds the full sum of $805, this entitles the plaintiff to a verdict. Now you come to the final question—What shall the damages be for this unnecessary sale of plaintiff's goods? What damage has she suffered? Her damages are certainly for the full value to her of the goods unnecessarily sold in order to make up the $105 of excessive rent. Undoubtedly, thus far, she has suffered damage. Here you will have nothing to do with the value fixed in this appraisement. You may alter it ; it is not binding or conclusive. It ought not to be received as the value of the goods to her. It only purports to be what the goods are worth at public sale for cash. You may receive it as evidence of that. In considering what they were worth to the plaintiff, you should allow her what it would cost her to replace them, with full compensation for the time she might be deprived of their use, the inconvenience she has suffered from their loss, and the annoyance she has been subjected to. And as the amercement of the landlord is to be grievous, you need not measure with any very great accuracy the damage thus suffered. That is all I deem necessary to be said upon that subject."

Verdict for plaintiff for $1,010.18, and judgment thereon, whereupon defendants took this writ of error, assigning for error, inter alia, the admission of plaintiff's offer of evidence as above, the answers to the points above stated, and that part of the charge above cited.

*V. Gilpin Robinson* and *J. Alexander Simpson*, for plaintiffs in error.

*J. M. Broomall*, for defendants in error.

Mr. Justice TRUNKEY delivered the opinion of the court, April 16th 1883.

The lessee covenanted to pay rent, $1,500 per annum, and also "the gas bills at the rate of $3 per 1,000 feet during her occupancy of the premises." The lessor covenanted that upon the faithful compliance with all the conditions and requirements on the part of the lessee, a deduction would be made of $75 from each quarter's rent. It was uncontroverted that the lessee paid the first three quarters' rent, and received the said deduction; that she paid $425 to apply on rent for the three quarters ending on August 1st 1879; and that she failed to perform the covenants so as to entitle her to any deduction from the last three quarters. The court instructed the jury that the amount of rent due was $700, independent of any question about gas.

That the lessee agreed to pay for the gas she used, at a certain rate, is as plain as that she agreed to pay $1,500 per annum. Both stipulations are in immediate connection, and the covenant to pay for the gas, is as much a part of the rent as would be a covenant to pay the taxes upon the premises during the term. A faithful performance of all the numerous requirements would have entitled her to a reduction of $75 from every quarter. Her obligation to pay for the gas is as explicit as to pay for anything else, and could not be discharged with broken covenants. A breach of the conditions of the clause providing for a deduction, left the lessee answerable, as if said clause were omitted, for by her own default it became inoperative.

We are of opinion that it was error to rule that the sum, due for gas was not part of the rent, and could not be included in the amount distrained for by the landlord. This ruling is the basis of nearly all the instructions which are assigned for error, and so far as it enters into the matter of said assignments, they must be sustained. To remark all parts of the charge and answers to points which are infused with said ruling is unnecessary, for it is apparent that the tenor of the instructions would have been very different had the learned judge set out with the proposition, that the landlord could lawfully distrain for the amount of rent, including the bills for gas, due and unpaid.

The defendant's ninth point was rightly refused, for the landlord asserted no title to the goods, under the assignment in the lease, but distrained them for rent as the goods of the

tenant and after the distress, while holding them thereunder he was bound to act in all respects as if the tenant were the owner.

Testimony respecting the seizure and sale of the goods of other persons, in which the plaintiff had no interest, was irrelevant. Possibly it was harmless, yet it may have tended to swell the damages. For what purpose it was offered does not appear, and, as the case now appears, the eleventh assignment must be sustained.

The only remaining question raised by the assignments that calls for notice relates to damages. What is now made the chief cause of complaint would not exist had it not been taken that the distress was for more rent than was due, and also excessive. But it is not certain that the same points will not arise upon another trial, and it is necessary to note so much of the instruction respecting damages as is deemed erroneous. With respect to the sale of the plaintiff's goods to satisfy the excessive rent claimed, the court repeatedly charged that they were to be valued at what they were worth to her, and further said to the jury : " In considering what they were worth to the plaintiff, you should allow her what it would cost her to replace them, with full compensation for the time she might be deprived of their use, the inconvenience she has suffered from their loss, and the annoyance she has been subjected to. And as the amercement of the landlord is to be 'grievous, you need not measure with any very great accuracy the damages thus suffered." This gave full latitude to find exemplary damages, not only for the grievous amercement of the landlord, but to satisfy the tenant for inconvenience and annoyance. There was no limit, but the discretion of the jury. They must have understood that the defendant's seventh point and the answer did not apply to this part of the case. That point was, " Where a right of action exists, and the landlord proceeds according to law, if a mistake has been made in the amount claimed, the jury are confined to the actual damage sustained." Answer—" This point is affirmed, but of course you will allow on no account exemplary damages. The damages are to be full and compensatory only." .Unless the excess claimed was wanton, or willful, the true rule is embodied in that point and the answer. Where no circumstances of aggravation are shown, the damages are the fair value of the goods, with the cost of replacing them, and other actual injury, to which interest may be added. The measure is the value of the goods at the time when and place where they were distrained, not merely what they were worth for removal, but what it would have cost to procure goods of like quality, and put them in the same place, including compensation for the necessary time, and for actual

[Reid *v.* Wood.]

loss directly and clearly proved in business. This is full compensation to the owner, and sufficient amercement upon a landlord who, in the effort to collect his rent, by mistake, distrains for more than is due.

In this case there was no evidence of a wrongful distress wantonly or willfully made, even if it were conceded that the gas bill was improperly added as part of the rent. Nor was there any proof of actual loss in business. The place was a summer boarding-house, and the date of distress September 19th; the summer had just ended, and the tenant had no money to pay the rent; her lease would expire on the 1st of May then next, and, after the distress, she wanted to take out $200 worth of furniture, and the landlord could have the rest; the goods were appraised at $1,351.95, sold for $845.80, and the overplus, after satisfying rent and costs, returned to her; yet she recovered $1,010.18. In any view, the rent actually due and unpaid at the time of the distress, including the overplus returned, should have been, and probably was, deducted in fixing the damages. When it is remembered that the latitude for exemplary damages was expressly limited to "the goods unnecessarily sold in order to make the $105 of excessive rent," and how little proof there was of actual damage in other branches of the case, the verdict seems to indicate a very liberal compensation for inconvenience and annoyance suffered by the plaintiff.

Judgment reversed, and venire facias de novo awarded.